Frances G. DRECKSHAGE, et al.,
Plaintiffs-Appellants,

v.

COMMUNITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al.,
Defendants-Respondents.

No. 44011.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 26, 1982.

John T. Bruere, St. Charles, for plaintiffs-appellants.

Robert C. Jones, Clayton, for defendants-respondents.

PUDLOWSKI, Judge.

The history of this litigation dates back to 1960.[1] In that year, Frances Dreckshage

1. Most of the operative facts are set forth in *Dreckshage v. Community Fed. S. & L. Ass'n*, 555 S.W.2d 314 (Mo. banc 1977). We have additionally drawn upon the court file in that

and John and Hazel White sold farmland in northwest St. Louis County to Bill Bangert, the proponent of an ambitious development plan for the area. The Dreckshage tract covered 171 acres and was sold for $85,000. The White tract covered 110 acres and was sold for $90,000. Bangert paid $1,000 down for each tract and gave notes for the balance, payable over a 5 year period and secured by a purchase money deed of trust. The agreements provided that the sellers would retain possession of all crop land until full payment of the purchase price; they were entitled to collect rents and required to pay property taxes in the meantime. Bangert made only one interest payment on the Dreckshage notes and three on the White notes.

Bangert continued, however, to push forward with his development plans. He applied to Community Federal Savings for a loan of $2.1 million (later increased to $2.7 million) in order to build a plant which would be leased to the R.C. Can Company (later purchased by Boise Cascade Corporation). Community Federal approved the loan on the condition that it would be secured by a first deed of trust on development properties owned by Bangert, covering not only the development site but also adjacent land, including the Dreckshage and White tracts.

In order to satisfy these requirements, Bangert sought to have the Dreckshage and White purchase money mortgages subordinated to a new mortgage securing Community Federal's loan. Bangert's attorney prepared the necessary documents and Bangert had them signed by Dreckshage on August 16, 1962 and by the Whites on August 13, 1962. Neither Dreckshage nor the Whites read the documents before signing them. Bangert falsely told them that they were signing a partial deed of release or an annexation petition related to the development. The subordination agreements were recorded on October 10, 1962.

Bangert's grandiose plans failed and he subsequently experienced severe financial difficulties and became delinquent on the loan from Community Federal. Foreclosure proceedings were begun in July, 1971, and a foreclosure sale was scheduled for August 11, 1971. The total amount due Community Federal at that time was $4.4 million in principal, additional advances, interest and foreclosure costs.

Dreckshage and the Whites were notified by letter of the impending foreclosure sale, and discovered for the first time the nature of the documents they had signed nine years earlier. They promptly filed a lawsuit against Bangert, Community Federal, and the trustee, asking that the subordination agreements be cancelled because they had been fraudulently obtained. See *Dreckshage, supra.* Because the cost of a bond would have been prohibitive, the plaintiffs did not seek to restrain the trustee (John T. Miller, an officer and director of Community Federal) from holding the foreclosure sale, which took place as scheduled. The plaintiffs' attorney appeared at the sale. Attorneys representing Community Federal and Boise Cascade were the only potential bidders in attendance. The trustee read the notice of sale as published. Plaintiffs' attorney then announced that Dreckshage and the Whites had filed suit seeking cancellation of the subordination agreement, and read the petition as filed.

Miller, the trustee, first offered the land in separate parcels, but no bids were received. He then offered the property in bulk. Community Federal made the sole bid of $1.8 million, which was accepted.

Bill Bangert was adjudged bankrupt in September, 1971.

Also in September, 1971, Community Federal exchanged correspondence with Boise Cascade concerning a possible sale of the industrial portion of the former Bangert properties. This tract, including the

case; the file in *Union Electric Co. v. Bangert,* Cause No. 309, 271, St. Louis County Circuit Court; and, of course, the transcript on appeal in this present action.

Boise Cascade plant, was sold on December 31, 1971 for approximately $2.7 million. Community Federal received no cash but took a 25 year note for the property secured by a deed of trust.

In 1972, Community Federal also received a condemnation award of approximately $84,000 for a utility easement crossing the former Dreckshage and White properties. Dreckshage and the Whites were parties to the condemnation action and the court ruled that they had no interest in the affected properties. At the time this action was filed, the Dreckshage and White farms were still held by Community Federal and were listed for sale.

The original action filed in August, 1971, came to trial in May, 1972. Dreckshage and the Whites alleged fraud on the part of Bangert and Community Federal. The trustee, Miller, was also a named defendant in the suit. The petition asked that the subordination agreements be cancelled and the trustee's sale set aside. Community Federal maintained that because it had relied on the validity of the subordination agreements, which were regular on their face, it was essentially a bona fide purchaser for value. The trial court found that Dreckshage and White had been defrauded and granted the relief they requested. Our Supreme Court, in 1977, reversed the trial court, holding that because Community Federal had no notice of the fraud, its interest was protected as that of a bona fide purchaser for value.

Dreckshage and White then filed this action in November, 1978, against Community Federal and John T. Miller, the trustee under the Bangert/Community Federal deed of trust, who had conducted the foreclosure sale. The petition alleged breaches of fiduciary duty by the trustee, his failure to "marshall the assets" at the foreclosure sale, and resulting unjust enrichment of Community Federal. It asked for an accounting or alternatively for cancellation of the trustee's deed. The plaintiffs' evidence at the trial focused on the "profit" made by Community Federal on the foreclosed properties. The trial court found for the defendant on the merits, and also concluded that the action was barred by the statute of limitations, and further it was res judicata. The plaintiffs have appealed. We consider first whether the trial court correctly held that the action was res judicata.

"It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief." *Jackson v. Hartford Accident and Indemnity Company*, 484 S.W.2d 315, 321 (Mo.1972).

"The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding . . . ." Restatement of Judgments 2d § 19, comment a.

The Restatement of Judgments 2d, § 24, states that a final judgment against a

plaintiff extinguishes all rights of that plaintiff against the defendant with respect to the "same transaction" or series of transactions out of which the original suit arose. Section 24(2) of the Restatement suggests that "what factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." The comments to § 24 make it clear that separate legal theories are not to be considered as separate "claims," even if "the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." Restatement of Judgments 2d, § 24, comment c.

If there is but one transaction, "the failure to tender an issue which is available prior to rendition of the judgment precludes its being raised thereafter in a proceeding between the same parties involving the same thing." *Winthrop Sales Corporation v. Shelton,* 389 S.W.2d 70, 73 (Mo.App.1965).

■ Appellants argue that the present action is not barred because it is based upon events which occurred at and after the foreclosure sale, whereas the original suit was based on fraud which occurred prior to the foreclosure sale. Appellants maintain that their "cause of action" in this suit did not "arise" until after the foreclosure sale. They cite *Abeles v. Wurdack,* 285 S.W.2d 544 (Mo.1956), for the proposition that a plaintiff may bring a separate cause of action arising from facts which occur after those facts on which the original action was based.

The situation in *Abeles* is clearly distinguishable from the present case. In *Abeles*

the operative or ultimate facts, on which recovery would depend, were different in each suit despite being proximate in time. But the operative facts in the case before us are coextensive with the operative facts on which the prior judgment was based. Contrary to appellants' assertion, the original action was not confined to events which took place before the foreclosure sale. Because Community Federal claimed to be a bona fide purchaser for value, it was necessary to establish that it acted in good faith and without fraud. *Dreckshage v. Community Fed. S. & L. Ass'n.,* 555 S.W.2d at 322.

Significant portions of the original trial focused on whether Community Federal or the trustee had any knowledge of the fraud; the extent to which they were aware of junior interests and the "true value" of the property; the possibility of collusion between Community Federal and Boise Cascade; and the interest of the trustee by virtue of his position as a director of Community Federal. All relevant information was available to the plaintiffs before the trial and judgment in the original suit. The theories advanced by plaintiffs in the present action merely "depend on different shadings of the facts, or would emphasize different elements of the facts." Restatement of Judgments 2d, § 24, comment c. Under these circumstances, we must hold that the plaintiffs are barred from bringing this action.[2]

Given our determination on this issue, it is unnecessary to reach the other assertions of error of plaintiffs' appeal. The judgment of the trial court is therefore affirmed.

SMITH, P.J., and SATZ, J., concur.

---

**2.** Plaintiffs were given an additional opportunity to establish their interest in the property via the condemnation action in which Community Federal was declared to be the sole owner of

the subject property. This fact further supports our conclusion that the present action is res judicata.