

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| XIAOYAN GU, | ) | No. ED100001 |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| vs. | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| DA HUA HU, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ACE INA INSURANCE | ) | |
| COMPANY CANADA, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

### ORDER

The Opinion issued on April 15, 2014 is hereby withdrawn. Respondent's motion

for rehearing and application for transfer are denied as moot.   New opinion to issue.

SO ORDERED.

Date: 7-29-14            _____
Lisa Van Amburg, Presiding Judge
Division IV
Missouri Court of Appeals Eastern District

cc:     James P. Leonard
        Walter L. Floyd, Jr.
        Gino F. Battisti
        Christopher A. Wadley



# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

XIAOYAN GU, ) No. ED100001
)
    Plaintiff/Appellant, )
)
vs. ) Appeal from the Circuit Court of
) the City of St. Louis
DA HUA HU, )
) Honorable David L. Dowd
and )
)
ACE INA INSURANCE )
    COMPANY CANADA, )
)
    Defendants/Respondents. ) Filed: July 29, 2014

### I. Introduction

In this equitable garnishment action, Xiaoyan Gu (Plaintiff) appeals the judgment of the circuit court denying her motion for summary judgment and granting the cross-motion for summary judgment of Ace Ina Insurance Company Canada (Defendant).[1] Plaintiff claims the circuit court's judgment is erroneous because Defendant is precluded from asserting its policy exclusion defense where the issue of the insured's coverage was

---

[1] Da Hua Hu is also named as a defendant, but Hu is not involved in this appeal. "Defendant" refers solely to Ace Ina Insurance Company Canada.

conclusively determined in a prior matter and Plaintiff "stands in the shoes" of the insured under § 379.200 RSMo (2000).[2] We reverse the judgment of the circuit court and remand for entry of judgment in Plaintiff's favor.

## II. Factual Background

The events underlying Plaintiff's equitable garnishment claim occurred in 2007, when her husband, Wei Wu (Husband), suffered serious bodily injury in a tractor trailer accident. Husband and Plaintiff filed suit to recover damages for Husband's injuries and Plaintiff's loss of consortium against the involved trucking companies and Da Hua Hu, the driver of the tractor trailer in which Husband was a passenger. After a bench trial, the court entered a judgment in favor of Husband and Plaintiff, awarding Husband $13,803,203.46 and Plaintiff $1,500,000.[3]

### A. *Prior Garnishment Action*

To collect on the judgment, Plaintiff and Husband jointly filed a § 379.200 equitable garnishment claim against Defendant, the insurer of the accident vehicle. Notably, Hu (Driver) had not purchased Defendant's insurance coverage. Instead, the insured under Defendant's Ontario Garage Automobile Policy (the Policy) was a Volvo dealership, Performance Equipment, from which Driver had purchased his tractor truck.

---

[2] All statutory references are to the Revised Missouri Statutes 2000, as supplemented, unless otherwise indicated.

[3] Before the bench trial on Plaintiff's and Husband's tort claims, the parties reached a partial settlement pursuant to a § 537.065 agreement. As part of the settlement agreement, the parties agreed that if Husband and Plaintiff obtained a judgment that they would seek to collect any judgment amount from any other insurance companies available and not against the defendants personally.

Performance Equipment had rented Driver the Ryder truck involved in the accident.[4] The Policy, however, provided coverage to additional insureds if that person operated any automobile in connection with Performance Equipment's business as a Volvo dealership.

Before the matter proceeded to a bench trial, Plaintiff voluntarily dismissed her claim without prejudice. Husband, however, proceeded with his claim on the theory that Driver was an additional insured under the Policy, meaning that Defendant would be required to indemnify Driver in the amount of Husband's tort judgment. Defendant's defense was that Driver was not entitled to coverage because at the time of the accident, he was operating the truck in furtherance of his own trucking business, not in connection with Performance Equipment's business. Indeed, it is undisputed that at the time of the accident, Driver was transporting a trailer of grapes and carrots between California and Ontario pursuant to a contract between his trucking company and a transportation broker.

On the first day of trial, Defendant raised an affirmative defense that the Policy's carriage-of-goods exclusion precluded coverage and requested leave to amend its pleadings. That exclusion provided an exception from coverage when the "automobile is being used . . . for the carrying of goods or materials for compensation." The trial court decided to "take [the matter] with trial," but ultimately denied the motion to amend the pleadings because such an amendment would prejudice Husband.

Subsequently, the trial court entered judgment in favor of Husband, finding that Driver was entitled to coverage under the Policy because Driver was operating the tractor

---

[4] Driver's truck experienced transmission problems and Performance Equipment rented him the Ryder truck that was ultimately involved in the accident.

trailer in connection with Performance Equipment's business since Performance Equipment rented the Ryder truck for Driver. The trial court entered a judgment against Defendant in the amount of $11,345,681.38.[5]

## B. *Present Garnishment Action*

Plaintiff then filed the instant equitable garnishment suit under § 379.200. In her petition, Plaintiff alleged that the issue of Driver's coverage under the Policy had been fully litigated in the prior garnishment action and that Defendant is collaterally estopped from re-litigating the issue of coverage for damages. Defendant denied liability, timely raising the affirmative defense that the Policy's carriage-of-goods exclusion precluded coverage.

Plaintiff moved for summary judgment, asserting that Defendant is collaterally estopped from re-litigating the issue of Driver's coverage and additionally that the doctrine of res judicata bars Defendant from raising defenses that it failed to raise in the prior litigation. Defendant countered that the preclusion doctrines are inapplicable. Defendant also filed a cross-motion for summary judgment, asserting that it is entitled to assert the Policy's carriage-of-goods exclusion and that no genuine dispute of material fact exists that the exclusion applies to exclude coverage for Plaintiff's claim.

The circuit court found that "it would be inequitable to apply collateral estoppel or res judicata" to prevent Defendant from asserting the Policy's carriage-of-goods exclusion as a defense. The circuit court explained:

---

[5] This judgment amount reflects adjustments for interest and the prior settlement payable to Husband and Plaintiff. This Court affirmed the trial court's judgment. *Wu v. Ace Canada*, 368 S.W.3d 214 (Mo. App. E.D. 2012).

During the trial of the prior garnishment action the trial court refused to allow [Defendant] to amend its pleadings to assert the affirmative defense that the carriage-of-goods exception applied to exclude [Driver's] coverage under the insurance policy. The court did this because to allow the defense for the first time at trial would have been prejudicial to [Husband] who had no opportunity to conduct discovery on the issue or otherwise prepare to meet the defense. The present circumstance differs substantially, as Plaintiff is not prejudiced by the failure of notice of the defense. Rather, any unfairness and prejudice would be to [Defendant], whose insurance policy clearly excluded coverage of the collision in question.

The Court is cognizant of the loss of consortium damages Plaintiff has sustained and continues to suffer. However, [Defendant] did not cause those damages and cannot fairly be held liable for payment of those damages under the circumstances of this case. As noted above, fairness under the particular facts of the case is the overriding concern. Here, to disallow litigation of the issue of coverage would be inequitable.

The circuit court further found that the Policy's carriage-of-goods exclusion precludes coverage. Accordingly, the circuit court denied Plaintiff's motion, granted Defendant's cross-motion, and entered summary judgment in favor of Defendant.[6] Plaintiff appeals.

### III. Standard of Review

This Court reviews de novo the circuit court's summary judgment decision. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper if the moving party has shown, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Affirmative Ins. Co. v. Broker*, 412 S.W.3d 314, 318 (Mo. App. E.D. 2013). We must view all the submissible evidence in the light most favorable to the non-moving party.

---

[6] The circuit court also denied Driver's motion for summary judgment, which had adopted Plaintiff's arguments. Driver does not appeal the circuit court's ruling.

*ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. A genuine issue of material fact barring summary judgment exists if "the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id*. at 382. However, because the parties do not dispute any material facts, our review focuses on the legal question whether Defendant was entitled to judgment as a matter of law.

## IV. Discussion

Plaintiff's sole point is that Defendant is precluded from asserting the Policy's carriage-of-goods exclusion as a defense because the issue of Driver's coverage was conclusively determined in the prior garnishment action and Plaintiff "stands in the shoes" of Driver under § 379.200. In the argument portion of her brief, Plaintiff explains that either collateral estoppel or res judicata preclude Defendant from asserting the Policy's carriage-of-goods exclusion in the instant garnishment suit. In essence, Plaintiff seeks to apply the preclusion doctrines offensively in order to avail herself of the trial court's prior judgment.

### A. *Collateral Estoppel*

We first consider Plaintiff's argument that collateral estoppel bars Defendant from raising the Policy's carriage-of-goods exclusion in the present garnishment action. "The doctrine of collateral estoppel, commonly known as issue preclusion, precludes the same parties from relitigating issues previously adjudicated between the same parties or those in privity with them." *Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 185 (Mo. App. W.D. 1999). Courts considering whether to apply this doctrine determine whether: (1) the issue decided in the prior adjudication was identical with the issue presented in the

6

present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Finley v. St. John's Mercy Med. Ctr.*, 958 S.W.2d 593, 595 (Mo. App. E.D. 1998). Collateral estoppel does not apply where its application would be inequitable. *See James v. Paul*, 49 S.W.3d 678, 683 (Mo. banc 2001); *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 721 (Mo. banc 1979). The overriding consideration is fairness and the analysis must focus primarily on principles of equity derived from the facts of each particular case. *James*, 49 S.W.3d at 688.

Here, we need only consider the fourth element of collateral estoppel to resolve the applicability of this doctrine. Clearly, Defendant's defense was not fully and fairly litigated in the prior garnishment suit.[7] Rather, due to Defendant's failure to raise the defense until the first day of trial, the trial court precluded presentation of that defense and Defendant was unable to litigate the substantive merits of the Policy's carriage-of-goods exclusion. The present garnishment action, then, would provide Defendant with the ability to litigate the defense's merits, which Defendant was foreclosed from pursuing in the prior garnishment action. *See* Restatement (Second) of Judgments § 27 (1982) ("An issue is not actually litigated if the defendant might have interposed it as an

---

[7] In determining whether a party has had a full and fair opportunity to litigate an issue, this Court considers the following additional equitable factors, as well as any other factors that may be relevant: (1) did the party against whom preclusion is asserted have a strong incentive to litigate the prior adjudication; (2) does the second forum afford the party against whom the preclusion is asserted procedural opportunities not available in the first action; (3) is the prior judgment, upon which the preclusion is based, inconsistent with one or more prior judgments; and (4) was the forum in the first action substantially inconvenient to the party against whom preclusion is asserted. *Wilkes v. St. Paul Fire & Marine Ins. Co.*, 92 S.W.3d 116, 122 (Mo. App. E.D. 2002).

affirmative defense but failed to do so[.]").[8]  Further, while Plaintiff makes a contrary allegation that the defense was fully and fairly litigated, this conclusory assertion is without support in the record or the law.[9]  Accordingly, we agree with Defendant that because the defense was never actually litigated, collateral estoppel does not apply to bar Defendant from raising the Policy's carriage-of-goods exclusion in the instant suit. Likewise, the circuit court did not err by reaching the same conclusion.

## B. *Res Judicata*

Plaintiff also contends that res judicata precludes Defendant from raising the Policy's carriage-of-goods exclusion in the present garnishment action.  Res judicata, or claim preclusion, "bars the same parties or their privities [sic] from relitigating the same cause of action that has been previously adjudicated by a final judgment on the merits . . . ."  *Kinsky v. 154 Land Co., LLC*, 371 S.W.3d 108, 112 (Mo. App. E.D. 2012).  The doctrine precludes the parties or privities from later bringing claims arising from the same set of facts *that could or should have been pursued* in the prior action.  *See Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 715-16 (Mo. banc 2008); see also *Vogt v. Emmons*, 158 S.W.3d 243, 247 (Mo. App. E.D. 2005) ("The doctrine of res judicata renders conclusive a judgment in a subsequent action between the same parties *as to all issues which might have been litigated* in the first action, not only as to all issues tried." (emphasis added)).  Accordingly, the doctrine applies "not only to points and

---

[8] We find the Restatement to be persuasive authority with respect to the preclusion doctrines, given the Missouri Supreme Court's repeated reliance on the Restatement (Second) of Judgments in its decisions.  *See James*, 49 S.W.3d at 683; *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 319 (Mo. banc 2002); *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 717 (Mo. banc 2008).

[9] Plaintiff discusses *State v. Daniels*, 789 S.W.2d 243 (Mo. App. W.D. 1990) and *In re Caranchini*, 956 S.W.2d 910 (Mo. banc 1997), but does not explain how those cases have any bearing on the present matter.

issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991). The purpose of this rule is to protect individuals from the burden of litigating multiple lawsuits, to promote judicial economy, and to minimize the possibility of inconsistent decisions. *Lauber-Clayton, LLC v. Novus Props. Co.*, 407 S.W.3d 612, 618, 619 (Mo. App. E.D. 2013); *Kinsky*, 371 S.W.3d at 112.

### 1. *Res Judicata Applies to Defenses*

At the outset, we address Defendant's argument that the doctrine of res judicata is inapplicable because it does not apply to bar the assertion of a defense. According to Defendant, the doctrine only applies to bar the reassertion of a claim or cause of action. In support, Defendant discusses *Ste. Genevieve County v. Fox*, 688 S.W.2d 392 (Mo. App. E.D. 1985).[10] In that case, the county sued the defendant engineers for negligence and breach of contract for failure to perform services. *Id*. at 393. The defendants counterclaimed, asserting that the county breached the contract first by failing to pay for services performed. *Id*. The parties settled the county's claims, agreeing to dismiss them with prejudice and to reserve the defendants' right to pursue their counterclaim. *Id*. The

---

[10] As additional support for this argument, Defendant also cites the definition of res judicata articulated in *Robin Farms, Inc.*, 991 S.W.2d at 185, which provides that res judicata "operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them." This is a general definition of res judicata repeated in our case law and does not stand for the proposition that the doctrine does not operate to bar a defense.

defendants then moved for summary judgment, which the circuit court granted. *Id.* On the county's appeal, the defendants argued that res judicata barred the county from defending against the counterclaim because the county's defense—that the services defendants actually rendered were not of the quality the contract required—constituted a cause of action raised in the county's original claims. *Id.* at 395.

The *Ste. Genevieve* Court disagreed with the defendants' characterization of the county's defense as a cause of action and concluded that res judicata did not bar the defense. *Id.* In so concluding, the Court implicitly recognized that the county could not have raised the defense in relation to its claims for negligence and breach of contract, which the parties had settled. *Id.* In no way, however, did the Court hold that res judicata does not apply to defenses that could have been raised in a prior lawsuit. *Ste. Genevieve*, therefore, does not provide authority for Defendant's proposition that res judicata applies only to the reassertion of causes of action or claims.

Moreover, Defendant's argument that res judicata is inapplicable to defenses ignores that Missouri has adopted a broad rule of res judicata. In Missouri, res judicata bars *every point and issue* properly belonging to the litigation that the parties *could have*, exercising reasonable diligence, brought forward at the time. *King Gen. Contractors, Inc.*, 821 S.W.2d at 501. We believe that this principle unequivocally applies to a defense that a defendant failed to raise in the prior action for failure to exercise reasonable diligence. To adopt Defendant's interpretation of res judicata would defeat the intended purposes of the doctrine—to avoid multiplicity of lawsuits and to promote finality and consistency of judgments. Although we are aware of no Missouri case that

10

has applied res judicata to preclude the assertion of a defense, we note that other jurisdictions, in recognition of the doctrine's purpose, have applied res judicata in this manner. *See, e.g., Gerber v. Holcomb*, 219 S.W.3d 914, 918 (Tenn. App. 2006) (party forfeited opportunity to assert defenses under principles of res judicata where party could have raised the defenses in a prior litigation); *Sprague v. Buhagiar*, 539 N.W.2d 587, 588-89 (Mich. App. 1995) (the plaintiff's failure to raise defenses and affirmative defenses in prior proceeding were waived and barred by res judicata in subsequent suit); *State ex rel. Iowa Dep't of Natural Res. v. Shelley*, 512 N.W.2d 579, 580-581 (Iowa App. 1993) (res judicata barred defenses that party failed to raise in prior action); *Weiner v. County of Essex*, 620 A.2d 1071, 1081 (N.J. Super. Ct. 1992) ("A defendant's decision not to raise a defense in the trial of a particular action is a waiver of that defense, which waiver is granted *res judicata* effect."); *State ex rel. Mart v. Mart*, 380 N.W.2d 604, 606 (Minn. App. 1986) ("[A]n affirmative finding of paternity in a judgment and decree of dissolution is res judicata barring an asserted defense of non-paternity in a subsequent [child support] action."). Accordingly, consistent with Missouri's broad rule of res judicata, we conclude that res judicata applies to bar the assertion of a defense properly belonging to the subject matter of the litigation that a party, exercising reasonable diligence, could or should have raised in the prior litigation.[11]

---

[11] Defendant also argues in support of the circuit court's reasoning that res judicata is inapplicable based on principles of equity. However, the circuit court improperly relied on equitable principles in its analysis of the application of res judicata. While equitable considerations are properly considered in a collateral estoppel analysis, *see James*, 49 S.W.3d at 688, we are aware of no Missouri case recognizing equitable principles as a basis for res judicata and Defendant cites to none.

11

Here, there is no dispute that the effect of the Policy's carriage-of-goods exclusion was an issue properly belonging to the prior garnishment action. Clearly, Defendant realized (albeit belatedly) in the prior proceeding that the critical issue before the court was whether the Policy's carriage-of-goods exclusion barred coverage of Husband's claim and precluded him (and consequently Plaintiff) from recovering any insurance proceeds. As Defendant concedes, there is no dispute that Defendant, had it exercised reasonable diligence, could have timely raised the Policy's carriage-of-goods exclusion in the prior garnishment action. However, Defendant failed to timely raise the defense in the prior garnishment action and the trial court precluded Defendant from presenting the defense. Under these circumstances, where Defendant could have raised the defense had it exercised reasonable diligence, res judicata may apply to bar Defendant from raising the defense in the instant action.

2. *Four Identities Exist*

Our analysis does not end with the conclusion that res judicata applies to bar a defense. We must consider whether the "four identities" necessary to the application of res judicata exist in this case. These identities include: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. *Lauber-Clayton, LLC*, 407 S.W.3d at 618. When these four identities coexist, "res judicata operates to bar 'any claim that was previously litigated between the same parties or those in privity with them.'" *Id*. (citation omitted). Defendant only disputes the existence of the first three identities.

12

### a. Identity of the Thing Sued For

The first factor is whether the identity of the "thing sued for" in the prior proceedings is the same as the thing sued for in the subsequent proceeding. Plaintiff posits that each garnishment action seeks the same thing—a legal determination of Driver's coverage. Defendant asserts that the thing sued for is different because Plaintiff seeks loss of consortium damages in the present garnishment action, not damages for severe bodily injury that Husband sought in the prior garnishment action.[12] In our view, both parties confuse the identity of "the thing sued for." Here, Plaintiff seeks the identical relief that Husband sought in the prior garnishment action: Garnishment of insurance proceeds to satisfy a judgment that stems from damages caused by the same motor vehicle accident. *See, e.g., Palmore v. City of Pacific*, 393 S.W.3d 657, 666 (Mo. App. E.D. 2013) ("'[T]he thing sued for' in both actions was monetary damages arising out of the same set of facts."). Accordingly, the first identity exists because both actions seek to garnish insurance proceeds to satisfy the same underlying tort judgment.

### b. Identity of the Cause of Action

The second factor we consider is whether the cause of action is the same in both the prior and subsequent action. This Court has defined the identity of the cause of action as "the underlying facts combined with the law, giving a party a right to a remedy of one form or another based thereon." *Williams v. Fin. Plaza, Inc.*, 78 S.W.3d 175, 183 (Mo.

---

[12] While Plaintiff cites no authority in support of her assertion, Defendant relies solely on *Maddox v. Truman Med. Ctr., Inc.*, 727 S.W.2d 152 (Mo. App. W.D. 1987), in support of its argument. *Maddox*, however, is not on point because it does not concern the identity of the "thing sued for" in the context of a res judicata analysis. Rather, that case simply stands for the principle that a spouse's damages for loss of consortium compensate a loss that is different than the spouse's injury. *Maddox*, 727 S.W.2d at 154.

13

App. W.D. 2002) (citation and quotations omitted). It is not necessary that the causes of action be identical, but the claims must have arisen out of the "'same act, contract, or transaction.'" *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318-19 (Mo. banc 2002) (citation omitted); *Jordan v. Kansas City*, 929 S.W.2d 882, 886 (Mo. App. W.D. 1996). As such, the focus is on the "factual bases of the claims, not the legal theories." *Chesterfield Village, Inc.*, 64 S.W.3d at 319.

Here, there is no serious dispute that both the prior and present equitable garnishment suits are based on the same set of facts. The operative facts for both lawsuits are the same. In both actions, proof was required that: (1) a judgment had been obtained against Driver for the injuries sustained in the 2007 accident and (2) that Driver, at the time of the accident, was a covered insured under the Policy. *See* § 379.200.[13] The existence of an underlying judgment arising from the injury caused by the accident and the issue of Driver's coverage for the injury caused would necessarily be litigated in both cases. No different or new facts were required for Plaintiff to establish her cause of action.

Defendant, however, argues that because Plaintiff must establish that she obtained a judgment related to her damages, rather than a judgment related to Husband's damages as in the prior equitable garnishment action, that identity of the cause of action is lacking. This argument ignores that the appropriate analysis centers on whether the present claim

---

[13] Under the statute, a plaintiff must establish that the plaintiff has obtained a judgment against the insurer's insured for an injury that arose during the policy period and that the insurer's policy covers the injury.

14

arises from the same set of facts as the prior action. *See Jordan*, 929 S.W.2d at 886.[14]

Certainly, Plaintiff's claim is different than Husband's prior equitable garnishment suit because the present garnishment action does not seek to establish a judgment awarding Husband damages. However, simply because Plaintiff's claim emphasizes different facts, mainly the damages the judgment awarded to her instead of Husband and calls for a different measure of liability, does not mean that the cause of action is separate. *See Chesterfield Village, Inc.*, 64 S.W.3d at 319-320; *Dreckshage v. Community Fed. Sav. & Loan Assoc.*, 641 S.W.2d 831, 833-34 (Mo. App. E.D. 1982) (indicating that claims based on the same transaction are not to be considered separate even if the claim depends on "'different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'" (quoting Restatement (Second) of Judgments § 24, comment c). Accordingly, the second identity of res judicata exists.

### c. Identity of the Parties

The third factor is whether the identity of the person and parties in the prior adjudication is the same as the identity of the person and parties in the subsequent action. As noted, res judicata applies to the parties and their privies, meaning that the party in the instant action need not have actually been a party in the prior action. *Palmore*, 393 S.W.3d at 667. For privity to exist, as to satisfy the same party identity, the interests of the party and non-party must be "so closely intertwined that the non-party can fairly be

---

[14] Plaintiff's argument, that the cause of action is the same because both claims are equitable garnishment actions under § 379.200, makes a similar mistake by focusing on the legal theories pleaded and not the facts underlying the claims.

considered to have had his or her day in court." *Stine v. Warford*, 18 S.W.3d 601, 605 (Mo. App. W.D. 2000).

Plaintiff argues that this identity exists because she is in privity with both Husband and Driver. Regarding whether Plaintiff is in privity with Driver, Plaintiff says that as a judgment creditor of Driver, she "stands in the shoes" of Driver "because the rights of the injured person bringing an action against the insurer for equitable garnishment are derivative [of the insured's contractual rights under the insurance policy] and can rise no higher than those of the insured . . . ." *Smith v. Progressive Cas. Ins. Co.*, 61 S.W.3d 280, 283 (Mo. App. E.D. 2001) (citation and quotations omitted). Defendant concedes that Plaintiff has the same rights as Driver under the Policy, but Defendant asserts, without citation to authority, that privity is lacking because Driver did not seek indemnification for loss of consortium damages in the prior suit.

Our Supreme Court applied the same reasoning advanced by Plaintiff in *James v. Paul*, 49 S.W.3d at 683-84. In that case, the plaintiff brought a garnishment action against the insured's insurer to satisfy a judgment that arose out of the insured's stabbing of the plaintiff. *Id.* at 680-82. The issue was whether collateral estoppel applied to preclude the plaintiff's suit, given that a policy exclusion barred coverage for intentional acts and the insured's guilty plea had established that the stabbing was intentional. *Id.* at 682. In considering whether the plaintiff was in privity with the insured, the Court explained that as a third-party beneficiary of the insured's contractual relationship with the insurer, the plaintiff "stands in the shoes of the insured" and has no rights greater or less than the insured. *Id.* at 683-84. The Court further explained that the insured's

16

interest with respect to whether his attack on the plaintiff was intentional was "tightly aligned with the interest" of the plaintiff. *Id.* at 684. The Court thus concluded that the plaintiff was in privity with the insured. *Id.*[15]

We believe *James* controls our analysis in the instant matter. Like the plaintiff in *James*, Plaintiff's garnishment action stems from the contractual relationship between Driver and Defendant. Indeed, Plaintiff does not seek to enforce rights outside the terms of Defendant's Policy. Nor does she assert rights greater than Driver's under the Policy. Moreover, under the circumstances of this case, Driver's and Plaintiff's interests are closely aligned because Driver, like Plaintiff, has an interest in satisfying the judgment against him through the insurance proceeds. Therefore, consistent with *James*, Plaintiff, as a third-party beneficiary of the Policy, "stands in the shoes" of Driver and is in privity with Driver. *See James*, 49 S.W.3d at 683-84.

Defendant's argument, that privity is lacking because Driver did not seek indemnification for Plaintiff's judgment in the prior suit, draws a distinction that is irrelevant to the privity analysis. Clearly, Driver, as a result of his status as a covered insured under the Policy, has a contractual right to indemnification for damages sustained in the underlying accident, including Plaintiff's damages. That Driver did not pursue indemnification for Plaintiff's damages in the prior suit is of no significance and Defendant points to no case law in support of its argument. Having concluded that

---

[15] Although the Court articulated this privity analysis in the context of collateral estoppel, we believe that its analysis applies equally to res judicata. Both doctrines require the party asserting the bar to prove the existence of identity of party in the prior and subsequent proceedings.

17

privity exists between Driver and Plaintiff, we need not consider whether privity also exists with Husband. Accordingly, the third identity exists in this case.

### d. Identity of the Person For or Against Whom the Claim Is Made

Defendant does not dispute the existence of the fourth factor—that the identity of the "quality of the person" for or against whom the claim is made is the same in both suits. *See Palmore*, 393 S.W.3d 667 ("quality of person" exists where defendants were identical and were sued in the same capacity in both suits); *Jordan*, 929 S.W.2d at 887 ("quality of the person" exists if a defendant's "status" is the same in both suits). Indeed, in both the prior and present garnishment actions, Defendant is the named defendant and the capacity in which Defendant is being sued is the same. Likewise, Plaintiff sued Defendant in her individual capacity as a judgment creditor in both the prior and present garnishment suits.

Having determined that all four identities exist and that Defendant could have raised the Policy's carriage-of-goods exclusion in the prior garnishment action, we conclude that res judicata applies to bar Defendant from raising that defense in the present garnishment action. The circuit court erred by reaching the opposite conclusion.

### 3. *Claim Splitting*

Finally, Defendant argues as it did in the summary judgment proceeding before the circuit court that if the four identities exist, then Plaintiff improperly split her claim by voluntarily dismissing it in the prior garnishment action and is now precluded from re-asserting her claim. Claim splitting generally prevents a plaintiff from suing for part of a claim in one action and then suing for the remainder of the claim in a subsequent action.

18

*See, e.g.*, *Chesterfield Village Inc. v. City of Chesterfield*, 64 S.W.3d 315 (Mo. banc 2002). If a party could have brought claims in the first action, the prohibition against claim splitting requires those claims to be merged into and barred by the first judgment. *Twehous Excavating Co., Inc. v. L.L. Lewis Investments, L.L.C.*, 295 S.W.3d 542, 546 (Mo. App. W.D. 2009). To determine whether claim splitting applies, such that a claim is barred by a former judgment, courts generally consider "whether the claim arises out of the same 'act, contract or transaction.'" *Chesterfield*, 64 S.W.3d at 318-19 (citation omitted). The penalty for splitting a single cause of action is that an adjudication on the first suit is a bar to the second suit. *Finley v. St. John's Med. Ctr.*, 958 S.W.2d 593, 595 (Mo. App. E.D. 1998).

Here, Plaintiff never secured a judgment against Defendant in the prior garnishment action and instead voluntarily dismissed her claim before Husband received his judgment against Defendant. Plaintiff later refiled the *exact same* garnishment claim. In essence, Plaintiff never sought to sever her claim and never obtained a final judgment against Defendant as to any part of her claim that would act as a bar to her current suit. As such, the facts of this case do not implicate the prohibition against claim splitting. *Compare Felling v. Giles*, 47 S.W.3d 390 (Mo. App. E.D. 2001) (prohibition against claim splitting applied where the plaintiff, after final resolution as to some claims, pursued relief on related claims that had been voluntarily dismissed without prejudice). Defendant's argument that claim splitting applies simply confuses Husband's judgment in the prior equitable garnishment suit as a bar to Plaintiff's present equitable garnishment claim. However, Plaintiff and Husband are separate parties holding

19

independent judgments against Driver and separate claims against Defendant. Husband could not have pursued Plaintiff's claim in the prior garnishment action. Therefore, Husband's judgment cannot act as a bar to Plaintiff's claim. *See Twehous Excavating Co., Inc*, 295 S.W.3d at 546. The claim splitting principles Defendant raises are inapplicable and Defendant's contention that claim splitting bars Plaintiff's claim is without merit. Plaintiff's point is granted.

## V. Conclusion

For the foregoing reasons, the circuit court's judgment is reversed and this matter is remanded for entry of a judgment in Plaintiff's favor consistent with this opinion.

_____
Philip M. Hess, Judge

Lisa Van Amburg, P.J. and
Patricia L. Cohen., J. concur.

20