Jeffrey PALMORE, et al., Appellants,

v.

CITY OF PACIFIC, et al., Respondents.

No. ED 98672.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 19, 2013.

---

S. Todd Hamby, Sheila Greenbaum, St. Louis, MO, John E. Batka, Florissant, MO, for appellant.

T. Michael Ward, Teresa M. Young, Samuel John Vincent III, St. Louis, MO, for respondent Alan J. Brun.

David C. Knieriem, Clayton, MO, for respondent R.H. Bruns Vault & Monument.

Evans & Dixon, St. Louis, MO, for respondent City of Pacific.

ROY L. RICHTER, Judge.

Appellants/Plaintiffs, Jeffrey Palmore, Bell Funeral Home, and Marvel Mason, Jr., appeal from the trial court's summary judgment in favor of Respondents/Defendants, City of Pacific, Sexton Alan Bruns and R.H. Bruns Vault and Monument Company. For the reasons below, we affirm.

## I. BACKGROUND

What began as a $225 overcharge claim in small claims court has escalated into a complicated, expensive, and lengthy litigation chronicle. In a quest by Jeffrey Palmore ("Palmore"), Bell Funeral Home, and Marvel Mason, Jr. ("Mason") (collectively, "Plaintiffs") to hold local government accountable, the underlying action was commenced to seek recovery of overcharged burial and interment fees from the City of Pacific, Sexton[1] Alan Bruns ("Sexton") and R.H. Bruns Vault and Monument Company ("Vault Company") (collectively, "Defendants").

Bell Funeral Home—owned and operated by Palmore[2]—assists individuals in funeral, interment and burial arrangements. Clients of Bell Funeral Home wishing to be buried or have a family member buried in the City of Pacific's municipal cemetery must pay interment and burial fees. These interment and burial fees are prescribed by City of Pacific Ordinances and/or Resolutions. During the times relevant to this case, City of Pacific Ordinances and Resolutions limited charges for interment and burial in a City of Pacific cemetery to a total of $360. Further, during all relevant times, the Sexton and the City of Pacific were under an agreement which provided that $60 of that $360 would be paid to the City of Pacific.

In order to pay these fees for their clients, Palmore, through Bell Funeral Home, would write one check to the City of Pacific for $60 and another check to the Vault Company (Sexton's privately owned burial company) for varying amounts. The Sexton would then deposit these checks into the Vault Company's bank accounts. Palmore and Bell Funeral Home set their fees based, partially, upon the fees charged by the Sexton, the Vault Company and the City of Pacific for burial and interment.

In 2005, Palmore and Bell Funeral Home assisted Laura Brooks Mason—mother of Mason—in securing two sepa-

---

1. A Sexton is an individual appointed by the City of Pacific to be in charge of the municipal cemetery property.

2. Palmore is a licensed funeral director and undertaker.

rate gravesites inside the City of Pacific cemetery. Each gravesite cost Bell Funeral Home $300, for a total of $600, which Bell Funeral Home paid directly to the City of Pacific. Immediately, Sandra Anderson—Laura Brooks Mason's daughter and Mason's sister—was buried in one of those gravesites. In order for Sandra Anderson to be buried, Bell Funeral Home, paid $580 to the Vault Company for the burial fees and $60 to the City of Pacific for interment fees for a total of $640. Thus, Bell Funeral Home paid $280 more than the $360 permitted by City of Pacific Ordinances and Resolutions.

In 2006, Laura Brooks Mason passed away and was buried in the second gravesite purchased by Bell Funeral Home in the previous year. In order to be buried in that gravesite, Bell Funeral Home paid $570 to the Vault Company for the burial fees and $60 to the City of Pacific for interment fees, for a total of $630. Thus, Bell Funeral Home paid $270 more than the $360 permitted by City of Pacific Ordinance and Resolutions.

In 2007, Palmore and Bell Funeral Home assisted Mason in securing a burial plot in the City of Pacific's municipal cemetery for his father. During this burial arrangement process, Bell Funeral Home paid Vault Company $525 for burial fees and paid $60 to the City of Pacific for interment fees for a total of $585. Thus, Bell Funeral Home paid $225 more than the $360 permitted by City of Pacific Ordinances and Resolutions.

Thereafter, Plaintiffs discovered that the City of Pacific Ordinances and Resolutions set the burial and interment fees at $360, in total. Furthermore, Plaintiffs also discovered that the two gravesites purchased for Laura Brooks Mason in 2005 were allegedly already owned by the Mason family. Accordingly, Plaintiffs allege they were overcharged $1,375 for the three Mason burials.

Seeking to recoup their monies, Plaintiffs sought a refund from the Defendants. After the Defendants refused to refund the Plaintiffs, the Plaintiffs sought relief from the administrative bodies of the City of Pacific. The administrative bodies of the City of Pacific continuously delayed resolution of the overage charges, thus, Palmore, commenced a *pro se* small claims suit in the Small Claims Court of Franklin County ("Small Claims Suit").

In that Small Claims Suit, Palmore sued all three defendants in connection with the burial of Mason's father. The small claims court entered judgment on July 25, 2008, in favor of Defendants City of Pacific and the Sexton and against Palmore; and in favor of Palmore and against Vault Company for $273.86.

On August 4, 2008, Vault Company, without an attorney, filed an application for a trial *de novo* ("Trial De Novo Suit"). The Trial De Novo Suit proceeded to the circuit court of Franklin County, whereupon Palmore filed an Amended Petition.[3] During the Trial De Novo Suit both the Vault Company (now represented by an attorney) and the City of Pacific filed separate motions for summary judgment. On March 9, 2009, Palmore voluntarily dismissed the Amended Petition. On March 17, 2009, the Trial De Novo court dismissed the Vault Company's application for trial *de novo* because an attorney did not file the application for trial *de novo*, and, thus, the application was void. However, on April 6, 2009, Palmore requested the Trial De Novo court to reconsider and vacate the dismissal of Vault Company's application. On August 12, 2009, the Trial

---

3. The legal file does not contain the Petition filed in the Small Claims Suit, nor the Amended Petition filed in the Trial De Novo Suit.

Thus, this Court is not aware of the difference, if any, between the two petitions.

De Novo court vacated the March 17 application dismissal and entered Plaintiff's voluntary dismissal of the Amended Petition.

On May 29, 2009, Palmore, Bell Funeral Home and Mason filed this action ("Present Suit") against the Sexton, the City of Pacific and the Vault Company in the Circuit Court of Franklin County. The three-count petition alleged the Defendants were unjustly enriched by the monies received in connection with the burial and interment of the Masons' three family members and that the Defendants violated the Missouri Merchandising Practices Act, Sections 407.010 *et seq.*

All three Defendants filed separate motions for summary judgment. Without written opinions, the trial court granted all three motions for summary judgment. This appeal follows.

## II. DISCUSSION

Plaintiffs raise ten points on appeal. Because the trial court chose not to state the reasons it granted summary judgment in favor of each Defendant, most of Plaintiffs' points relied on address each argument set forth in Defendants' separate motions for summary judgment.[4] A recitation of each point relied on is unnecessary for a full understanding of this Court's disposition.

### Standard of Review

Appellate review of summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are the same as the criteria applied by the trial court to test the propriety of summary judgment. *Id.* This Court reviews the record in the light most favorable to the party against whom summary judgment is entered and accords the non-movant "the benefit of all reasonable inferences from the record." *Id.* Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *E. Mo. Coal. of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield,* 386 S.W.3d 755, 757 (Mo. banc 2012); *see also* Rule 74.04(c)(6).

Germane to this appeal, a defendant may establish his or her right to summary judgment by demonstrating: (1) facts negating any element of the plaintiff's cause of action; (2) the plaintiff has presented insufficient evidence to allow the finding of the existence of any one of the elements of the plaintiff's action; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support a properly pled affirmative defense. *Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.,* 155 S.W.3d 50, 58–59 (Mo. banc 2005). "Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed." *Meramec Valley R–III Sch. Dist. v. City of Eureka,* 281 S.W.3d 827, 835 (Mo.App. E.D.2009).

---

4. We note that very few of Plaintiffs' ten points relied on follow the form prescribed by Rule 84.04(d). *See* Rule 84.04(d). Further, it is often difficult for this Court to determine to which Defendant or Defendants the points relied on are directed. However, because of the discretion afforded to this Court and in the interest of justice, we review this appeal on the merits to the extent the issues and arguments are ascertainable. *Gray v. White,* 26 S.W.3d 806, 815–16 (Mo.App. E.D.1999). The importance of following Rule 84.04 cannot be overstated. Follow the simple and mandatory Rule 84.04, lest your client's appeal be dismissed.

■ As in the case at bar, if the trial court does not identify its reasons for sustaining a defendant's motion for summary judgment, the trial court is presumed to have based its decision on the grounds specified in the defendant's motion for summary judgment. *Comp & Soft, Inc. v. AT & T Corp.*, 252 S.W.3d 189, 194 (Mo. App. E.D.2008). Thus, this Court is confined to the documents set out with specificity in a motion for summary judgment and the responses thereto. *See Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 85 (Mo.App. E.D.1999) ("As an appellate court, we are confined to considering the same information that the trial court considered in rendering its decision on the motion for summary judgment."). However, "[i]f the trial court's judgment is sustainable on any ground as a matter of law, even one different than that posited in the motion for summary judgment, the judgment should be sustained." *Tonkovich v. Crown Life Ins. Co.*, 165 S.W.3d 210, 215 (Mo.App. E.D.2005).

### Analysis

At the trial court, Defendant City of Pacific requested summary judgment be granted in its favor on the basis that *res judicata* barred Plaintiffs' cause of actions. The litigants' main contention is not whether the four identities of *res judicata* are present, but whether the application for the trial *de novo* was dismissed or whether Palmore voluntarily dismissed his Amended Petition during the Trial De Novo Suit

### A. Vault Company's application for trial *de novo* was void *ab initio*.

■ "[T]he dismissal of an application for a trial de novo results in a reinstatement of the judgment of the associate circuit court [or small claims court], [while] the dismissal of a *cause of action* results in the total abrogation of the associate circuit judgment as though there had never been one." *Stolfus v. Musselman & Hall Const., Inc.*, 845 S.W.2d 565, 567 (Mo.App. W.D.1992) (emphasis in original); *see also Kepler v. Dolines*, 941 S.W.2d 22, 23 (Mo. App. W.D.1997). Therefore, if Vault Company's application for trial *de novo* was dismissed, *res judicata* may have preclusive effect; however, if Palmore voluntarily dismissed his Amended Petition (or cause of action), then *res judicata* would have no preclusive effect.

■ In Missouri, a corporation cannot generally represent itself in legal matters and must act through licensed attorneys. *Schenberg v. Bitzmart, Inc.*, 178 S.W.3d 543, 544 (Mo.App. E.D.2005). "The normal effect of a representative's unauthorized practice of law is to dismiss the cause or treat the particular actions taken by the representative as a nullity." *Id.* However, in small claims court, corporations need not be represented by an attorney, but instead may be represented by an officer or authorized employee (i.e., self-representation for corporations in small claims court is permissible). *See* Rule 148.01.

Here, the Vault Company, a duly enacted Missouri corporation, was not represented by an attorney during the Small Claims Suit. While this, in and of itself, is permitted, the question remains as to whether a corporation, through a non-attorney, may file for a trial *de novo* after an adverse judgment in small claims court. The parties direct this Court to no case directly on point, and this Court's independent research finds none. Accordingly, it is imperative we determine whether the filing of an application for trial *de novo* constitutes "the practice of law," requiring an attorney. *See e.g., Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 338 (Mo. banc 2007) ("The judiciary is necessarily the sole arbiter of what constitutes the practice of law."); *In re First Escrow, Inc.*, 840 S.W.2d 839, 842 (Mo. banc 1992)

("It is the responsibility of the judiciary to determine what constitutes the practice of law, both authorized and unauthorized.").

■ "The practice of law" has been defined by the Missouri Legislature as "the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies." *See* Section 484.010.1. Generally, we look to the character of the act performed, and not to the place where it is performed as the controlling factor. *Hoffmeister v. Tod,* 349 S.W.2d 5, 13 (Mo. banc 1961).

As Plaintiffs correctly argue, the filing of an application for trial *de novo* is performed in small claims court. *See* Section 482.365.2 ("The right to trial de novo shall be perfected by filing an application for trial de novo with the clerk of the small claims court within tens days after the judgment is rendered."). However, the place of performance does not control whether the practice of law has occurred, but rather the character of the act performed controls. *See Hoffmeister, supra.*

■■ The character of filing an application for a trial *de novo* from small claims court is analogous with beginning anew an action in circuit court. *Page v. Lewis,* 902 S.W.2d 359, 360 (Mo.App. E.D.1995) ("a trial *de novo* from a small claims judgment is treated as a new trial anew of the entire case"); *see also State ex rel. Means v. Randall,* 764 S.W.2d 120, 123 (Mo.App. W.D.1988) ("the statutory scheme of a trial de novo as an original proceeding in the circuit court"). A corporation, being an artificial person and creation of law, cannot appear or act in person, including the filing of petitions in circuit court. *Prop. Exch. &*

*Sales, Inc. (PESI) by Jacobs v. Bozarth,* 778 S.W.2d 1, 3 (Mo.App. E.D.1989). Corporations, in legal matters, must act through a licensed attorney. *Id; see e.g., Clark v. Austin,* 340 Mo. 467, 101 S.W.2d 977, 983 (1937) ("It cannot appear by an officer of the corporation who is not an attorney, and may not even file a complaint except by an attorney"); *Joseph Sansone Co. v. Bay View Golf Course,* 97 S.W.3d 531, 532 (Mo.App. E.D.2003) ("Because Bay View is a corporation and a licensed attorney did not file its notice of appeal, the notice of appeal is void."). Thus, we find the filing of an application for trial *de novo* constitutes "the practice of law" as it is akin to filing a petition in circuit court, and, therefore, must be preformed by an attorney. Because Vault Company's application for trial *de novo* was not filed by an attorney, its application was void *ab initio.* As such, the actions performed during the Trial De Novo Suit are also void, including Palmore's attempt to voluntarily dismiss his Amended Petition.

Finding that no valid application for trial *de novo* was filed, the small claims judgment became final ten days after entry, pursuant to Section 482.365. We now proceed to evaluate the *res judicata* effect that the small claims judgment has upon the Present Suit.

### B. *Res judicata* bars Plaintiffs' Present Suit.

■ In Missouri, the doctrine of *res judicata,* commonly referred to as "claim preclusion," precludes the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them. *Am. Polled Hereford Ass'n v. City of Kansas City,* 626 S.W.2d 237, 241 (Mo.1982); *see also Jackson v. Hartford Acc. & Indem. Co.,* 484 S.W.2d 315, 320 (Mo.1972) (It is a fundamental principle of jurispru-

dence that material facts or question which were raised in a former action and were judicially determined are conclusively settled, and such facts or question become *res judicata* and may not be litigated again); *Andes v. Paden, Welch, Martin & Albano, P.C.*, 897 S.W.2d 19, 21 (Mo.App. W.D. 1995) ("a party should not be allowed to litigate a claim and then . . . seek to relitigate the identical claim in a second proceeding").

 This doctrine is designed to prevent a multiplicity of lawsuits. *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 42 (Mo. banc 1999). As such, claim preclusion also bars a litigant from bringing, in a subsequent lawsuit, "claims that *should have* been brought in the first suit." *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 715 (Mo. banc 2008) (emphasis in original). In other words, *res judicata* applies "not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but also to *every point properly belonging to the subject matter of the litigation* and which *the parties, exercising reasonable diligence, might have brought forward at the time.*" *Williams v. Rape*, 990 S.W.2d 55, 60 (Mo.App. W.D. 1999) (emphasis added); *see also Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 212 (Mo.App. E.D.1987) ("where two actions are on the same cause of action, the earlier judgment is conclusive not only as to matters actually determined in the prior action, but also as to other matters which could properly have been raised and determined therein"). Thus, the proper test for determining whether *res judicata* applies is whether the case arises out of the same transaction or occurrence and involved the same parties, subject matter, and evidence, not whether a new suit states a different legal theory. *Rape*, 990 S.W.2d at 60.

 *Res judicata* adheres where "four identities" are met: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991). *Res judicata* applies not only to losers, but also to parties that prevailed in an earlier judgment. *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002).

For ease of understanding, we graph the parties and claims to the prior litigation.

| Lawsuit | Plaintiff(s) | Defendant(s) | Cause of Actions | Damages |
| --- | --- | --- | --- | --- |
| Small Claims Suit | Palmore | City of Pacific Sexton Vault Co. | N/A | • $225 (overcharges for the burial of Mason's father in 2007) |
| Present Suit | Palmore Bell Funeral Home Mason | City of Pacific Sexton Vault Co. | (1) Money Had and Received | • $280 (overcharges for the burial of Sandra Anderson in 2005) |
| | | | (2) Violation of the Missouri Merchandising Practices Act ("MMPA") | • $270 (overcharges for the burial of Laura Brooks Mason in 2006) |
| | | | (3) Unjust Enrichment | • $225 (overcharges for the burial of Mason's father in 2007) • $600 (the purchase of |

As demonstrated below, Plaintiffs' Present Suit is barred because all four identities of *res judicata* are satisfied.

### (1) Identity of the thing sued for

In both the Small Claims Suit and the Present Suit, the Plaintiffs sought monetary damages for the Defendants' overcharging of burial and interment fees for three Mason family members. Although the Present Suit seeks a higher measure of monetary damages than that of the Small Claims Suit, this does not eviscerate the "identity of the thing sued for" because Plaintiffs could have brought all the claims for damages in the Small Claims Suit as they were then known and ascertainable. *See Dreckshage v. Cmty. Fed. Sav. and Loan Ass'n*, 641 S.W.2d 831, 834 (Mo.App. E.D.1982).

Here, the first element is satisfied because "the thing sued for" in both actions was monetary damages arising out of the same set of facts.[5] *See e.g., Jordan v. Kansas City*, 929 S.W.2d 882, 886 (Mo. App. W.D.1996).

### (2) Identity of the cause of action

■ The key issue in determining whether *res judicata* bars Plaintiffs' Present Suit is whether the claim or cause of action has been previously litigated. *Chesterfield Vill., Inc.*, 64 S.W.3d at 318. This second identity—identity of the cause of action—is defined as "the underlying facts

combined with the law, giving a party a *right* to a remedy of one form or another based thereon." *State ex rel. Shea v. Bossola*, 827 S.W.2d 722, 723 (Mo.App. E.D. 1992) (quoting *Barkley v. Carter Cnty. State Bank*, 791 S.W.2d 906, 912 (Mo.App. S.D.1990)) (emphasis in original).

The cause of actions in both the Small Claims Suit and the Present Suit sought monies from the Defendants for the overcharges of burial and interment fees. Regardless of the legal claims the Plaintiffs' brought that may have differed in the two suits, the legal right is identical, in that the Plaintiffs seek redress for their overpayment of fees. *See e.g., Chesterfield Vill., Inc.*, 64 S.W.3d at 318.

■ While Plaintiffs add new legal theories and a new calculation of monetary damages in the Present Suit, "[s]eparate legal theories are not to be considered as separate claims, even if the several legal theories depend on different shadings of the fact, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Siesta Manor, Inc. v. Cmty. Fed. Sav. and Loan Ass'n*, 716 S.W.2d 835, 839 (Mo.App. E.D.1986) (internal citations and quotation marks omitted).

■ Furthermore, *res judicata* bars a litigant from asserting claims that should have been asserted in previous litigation. *See Kesterson, supra; see also Williams, supra*.[6] Here, Plaintiffs' claims for all

---

**5.** "When a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action. The events constitute but one transaction or a connected series." Restatement (Second) of Judgments § 24, *comment d*.

**6.** This aspect of *res judicata* is commonly referred to as claim splitting. "[T]he rule against splitting a cause of action is a form of claim preclusion or res judicata." *Shores v. Express Lending Serv., Inc.*, 998 S.W.2d 122, 127 (Mo.App. E.D.1999); *see also King Gen. Contractors, Inc.*, 821 S.W.2d at 501. "A cause of action which is single may not be split and filed or tried piecemeal, the penalty for which is that an adjudication on the merits in the first suit is a bar to a second suit."

monetary damages asserted in the Present Suit were known and ascertainable at the time of the Small Claims Suit. However, Plaintiffs' failed to assert those claims during the Small Claims Suit. Accordingly, Plaintiffs are now barred from asserting those claims in the Present Suit. *See e.g.,* Restatement (Second) of Judgments § 24, *comment d* ("When a number of items are overdue on a running account between two persons, and the creditor, bringing an action on the account, fails to include one among several past due items, judgment for or against the creditor precludes a further action by him to recover the omitted item. This conforms to ordinary commercial understanding and convenience.").

Therefore, the second identity of *res judicata* is satisfied.

### (3) Identity of the persons and parties to the action

Compared with the Small Claims Suit, the Present Suit includes two additional Plaintiffs—Bell Funeral Home and Mason.

 While it is true that *res judicata* only applies where there is an "identity of persons and parties to the action," the "party in the present action need not have been a party to the prior action, so long as the party was in privity with one of the parties to the action." *Lomax v. Sewell,* 50 S.W.3d 804, 809 (Mo.App. W.D.2001). Accordingly, "[p]rivity, as a basis for satisfying the 'same party' requirement of *res judicata,* is premised on the proposition that the interests of the party and non-party are so closely intertwined that the non-party can fairly be considered to have had his or her day in court." *Stine v. Warford,* 18 S.W.3d 601, 605 (Mo.App.

*Burke v. Doerflinger,* 663 S.W.2d 405, 407

W.D.2000). Thus, when privity exists, all alike are concluded and bound by the prior judgment. *Hoelscher v. Patton,* 842 S.W.2d 127, 128 (Mo.App. E.D.1992). Commonly, privity hinges upon the parties' relationship to the subject matter of the litigation. *Clements v. Pittman,* 765 S.W.2d 589, 591 (Mo. banc 1989).

Here, while Bell Funeral Home was not a party in the Small Claim Suit, its interests were adequately represented by Palmore. Palmore is the 50% owner of Bell Funeral Home; Palmore and Bell Funeral Home had the same interests in recovering monies overpaid to Defendants. Additionally, while Mason was also not a party in the Small Claims Suit, his interests were intertwined and adequately represented with the interests of Palmore; Palmore sought recovery of monies overpaid to Defendants, which Palmore charged to Mason. Mason's interests were the exact same as Palmore's interests, in that Mason wanted to recuperate money that should not have been paid to Defendants.

Therefore, the third identity of *res judicata* is satisfied.

### (4) Identity of the quality of the person for or against whom the claim is made

The fourth identity is easily satisfied as the Defendants are identical, both in identity and in their quality, character and capacity. All three Defendants were sued in their same capacity in both the Small Claims Suit and Present Suit. The fourth identity of *res judicata* is satisfied.

Finding that all four identities of *res judicata* are satisfied, Plaintiffs' Present Suit is barred.

(Mo.App. E.D.1983).

## III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

ROBERT G. DOWD, JR., P.J., and ANGELA T. QUIGLESS, J., concur.