

# Missouri Court of Appeals

## Southern District

### Division One

MEADOWFRESH SOLUTIONS USA, LLC, )
)
)
    Plaintiff-Appellant, )
)
    v. )          Nos. SD35874, 35882, 35883
)
MAPLE GROVE FARMS, LLC, )          Filed: May 20, 2020
LEON RINEHART, TED DAHLSTROM, )
CAROL DAHLSTROM, CURTIS HALL, )
LISA HALL, KYLE BOUNOUS, )
)
    Defendants-Respondents/Cross- )
    Appellants, )
)
and EUGENE ENOWSKI, )
)
    Creditor-Respondent/Cross- )
    Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Circuit Judge

### **REVERSED**

This is a consolidated appeal and cross-appeal from the trial court's judgment

finding Eugene Enowski ("Enowski") to be a partial secured creditor of Maple Grove

Farms, LLC ("Maple Grove"). Meadowfresh Solutions USA, LLC ("Meadowfresh")

1

alleges the trial court erred in finding Enowski to be a partial secured creditor of Maple Grove and brings two points on appeal. Because we find Point II of Meadowfresh's brief dispositive, we address only that point.

In Point II, Meadowfresh claims the judgment in **Meadowfresh I**[1] determined that All American Cattle Leasing, LLC ("AACL") was the alter ego of Maple Grove with respect to the purchase of certain Arvest Bank promissory notes secured by a deed of trust and, because of this finding in **Meadowfresh I**, the obligations in the notes were extinguished via the doctrine of merger when AACL, acting as Maple Grove's alter ego, purchased the debt. Accordingly, there were no obligations to secure via the deed of trust (and, thus, no security interest).[2] We agree and reverse the judgment.

In **Meadowfresh I**, Meadowfresh and John ("Jock") and Susan Fulton (collectively, "the Fultons") sued AACL, Maple Grove, Leon Rinehart, Ted Dahlstrom, Carol Dahlstrom, Curtis Hall, Lisa Hall, and Kyle Bounous (collectively, "Minority Members"),[3] for claims arising out of Minority Members' attempts to wrongfully remove

---

[1] **Meadowfresh I** refers to Greene County Case No. 1531-CC01018, and the subsequent appellate action disposed of in **Meadowfresh Solutions USA, LLC v. Maple Grove Farm, LLC**, 586 S.W.3d 329 (Mo.App. S.D. 2019).

[2] We do not address Enowski's issues because of our resolution of Meadowfresh's appeal. As resolution of Meadowfresh's appeal is dispositive as to all issues, we need not address the allegations of error raised by Enowski, Maple Grove, Leon Rinehart, Ted Dahlstrom, Carol Dahlstrom, Curtis Hall, Lisa Hall, and Kyle Bounous (collectively, "Respondents") in their cross-appeals.
    After this case was submitted to this Court, Ted and Carol Dahlstrom voluntarily dismissed with prejudice all causes of action, claims and counterclaims previously asserted by them in this action. This Court construes the filing as a motion to dismiss the cross-appeal of respondents/cross-appellants Ted Dahlstrom and Carol Dahlstrom as the cause has been submitted to this Court. *Cf.* Rule 84.09, Missouri Court Rules 2020 ("An appellant may file a dismissal of the appellant's appeal in the appellate court at any time *prior* to the submission of the cause in the appellate court.") (emphasis added). Having fully considered the same, this Court denies the motion as moot.

[3] Curtis Hall, Ted Dahlstrom, Carol Dahlstrom, Leon Rinehart, Kyle Bounous and Rhonda Bounous are referred to as Minority Members. Kyle Bounous did not originally have an interest in Maple Grove but had one in Meadowfresh. Rhonda Bounous did not have an interest in Maple Grove. Nevertheless, we include Kyle and Rhonda Bounous for ease of reference.

Meadowfresh from Maple Grove and John Fulton as manager.[4]  Particularly important to

Meadowfresh's argument regarding collateral estoppel as to the issue of whether AACL

and Maple Grove were alter egos and whether merger applies are jury Instructions No. 32

for piercing the corporate veil and No. 35 which releases the Fultons from the guaranties

on the loans previously owned by Arvest Bank:

**Instruction No. 32**

Your verdict must be for Plaintiffs Meadowfresh Solutions USA, LLC and Jock Fulton on their claim for piercing the corporate veil if you believe:

First, Defendants Maple Grove Farms, LLC, All American Cattle Leasing, LLC, Ted Dahlstrom, Carol Dahlstrom, Curtis Hall and Lisa Hall, Leon Rinehart, or Kyle Bounous exercised control of Maple Grove Farms, LLC or All American Cattle Leasing, LLC with respect to the purchase of the Arvest Bank loans by All American Cattle Leasing, LLC, the loans from All American Cattle Leasing, LLC to Maple Grove Farms, LLC, or the Lease-to-Own Agreement between Maple Grove Farms, LLC and All American Cattle Leasing, LLC; and

Second, the control of Maple Grove Farms, LLC or All American Cattle Leasing, LLC by Defendants Maple Grove Farms, LLC, All American Cattle Leasing, LLC, Ted Dahlstrom, Carol Dahlstrom, Curtis and Lisa Hall, Leon Rinehart, or Kyle Bounous was used to:

Undercapitalize Maple Grove Farms, LLC; or

Improperly avoid Maple Grove Farms, LLC's liabilities to Plaintiffs; or

Implement a plan whereby the Defendants Maple Grove Farms, LLC, All American Cattle Leasing, LLC, Ted Dahlstrom, Carol Dahlstrom, Curtis and Lisa Hall, Leon Rinehart, or Kyle Bounous could enforce the guaranties of Plaintiffs for the debt of Maple Grove Farms, LLC; and

---

[4] Herein, we further incorporate and rely on facts from our decision in ***Meadowfresh I*** without further attribution.  *See **Meadowfresh Solutions USA, LLC v. Maple Grove Farm, LLC***, 586 S.W.3d 329 (Mo.App. S.D. 2019).  Relevant to the claims in the case before us are the ***Meadowfresh I*** counts of Malicious Prosecution, Breach of Contract/Civil Conspiracy, Breach of Contract/Tortious Interference/Civil Conspiracy, and Piercing of Corporate Veil.

Third, the control of Maple Grove Farms, LLC or All American Cattle Leasing, LLC by the Defendants Maple Grove Farms, LLC, All American Cattle Leasing, LLC, Ted Dahlstrom, Carol Dahlstrom, Curtis and Lisa Hall, Leon Rinehart, or Kyle Bounous caused injury or unjust loss to Plaintiffs.

**Instruction No. 35**

Your verdict must be for Plaintiffs Meadowfresh Solutions USA, LLC, and Jock and Susan Fulton on their claim of declaratory judgment as to their release from their guaranties for the loans previously owned by Arvest Bank if you believe:

First, Plaintiffs Meadowfresh Solutions USA, LLC, and Jock and Susan Fulton entered into Maple Grove Farms, LLC loan guaranties as the majority members of Maple Grove Farms, LLC and Meadowfresh Solutions USA, LLC, respectively; and

Second, Defendants Maple Grove Farms, LLC, All American Cattle Leasing, LLC, Ted Dahlstrom, Carol Dahlstrom, Curtis and Lisa Hall, Leon Rinehart, or Kyle Bounous used All American Cattle Leasing, LLC to purchase the loans for the purpose of holding Plaintiffs liable under their guaranties despite the attempted expulsion of Meadowfresh Solutions USA, LLC as majority member of Maple Grove Farms, LLC; and

Third, as a result of Defendants' conduct, there is a risk of action to hold Plaintiffs liable for their guaranties.

In accordance with the jury's findings, the trial court entered its Amended

Judgment. The trial court stated, in relevant part:

The Court further orders and adjudges that, in accordance with Verdict Form D signed by twelve jurors, on Plaintiffs' [Meadowfresh and Fulton] claims to pierce the corporate veil of Maple Grove Farms, LLC and All American Leasing, LLC, judgment is hereby entered in favor of [Meadowfresh and Fulton] and against Defendants Maple Grove Farms, LLC, All American Cattle Leasing, LLC, Ted Dahlstrom, Carol Dahlstrom, Curtis Hall, Lisa Hall, Leon Rinehart, and Kyle Bounous and said Defendants are jointly and severally liable for the judgments rendered herein against Maple Grove Farms, LLC.

. . . .

4

The Court, in accordance with Verdict Form E signed by the twelve jurors, hereby orders, adjudges, and declares that Plaintiffs [Meadowfresh and the Fultons] are hereby released from their guaranties securing the Maple Grove Farms, LLC loans previously owned by Arvest Bank.

Thus, the jury pierced the corporate veils of AACL and Maple Grove and released Meadowfresh and the Fultons from their obligations arising under the personal guaranties securing the debt owed by Maple Grove to Arvest Bank.

In *Meadowfresh I*, Meadowfresh also had equitable claims for an accounting and judicial dissolution of Maple Grove, as well as a motion for an appointment of receiver of Maple Grove.[5] The trial court in *Meadowfresh I* severed the equitable claims into a separate action, case number 1731-CC01311 ("*Meadowfresh II*").[6]

In *Meadowfresh II*, the trial court appointed a receiver. On December 4, 2017, Enowski filed a "Motion for Relief from Stay by Secured Creditor," claiming to be a secured creditor of Maple Grove by virtue of an assignment of promissory notes from AACL to him purportedly secured via a deed of trust. The trial court heard evidence on Enowski's secured creditor claim and determined he had a partial security interest in the

---

[5] In *Meadowfresh I*, the motion for an appointment of receiver was granted on or about June 16, 2017, but one was not appointed at that time.

[6] *Meadowfresh II* refers to Greene County Case No. 1731-CC01311, and subsequent appellate actions disposed of in *Meadowfresh Solutions USA, LLC v. Maple Grove Farms, LLC*, 578 S.W.3d 758 (Mo. banc 2019), and *Meadowfresh Solutions USA, LLC v. Maple Grove Farms, LLC*, 586 S.W.3d 353 (Mo.App. S.D. 2019). In *Meadowfresh II*, on November 6, 2017, the trial court appointed a receiver for Maple Grove. Maple Grove filed a Motion for Order Revoking, or in the Alternative, Modifying and Changing Interlocutory Order Appointing Receiver. That motion was denied, and Maple Grove timely brought an appeal, Maple Grove Farms, Leon Rinehart, Ted Dahlstrom, Carol Dahlstrom, Curtis Hall, Lisa Hall and Kyle Bounous appealed the trial court's appointment of a receiver. We originally dismissed the appeal because the order was not denominated a judgment pursuant to Rule 74.01(a). The case was transferred to the Missouri Supreme Court pursuant to Rule 83.03. The Supreme Court of Missouri reversed, holding that the order was appealable and did not have to be denominated a judgment pursuant to Rule 74.01(a). *Meadowfresh Solutions USA, LLC v. Maple Grove Farms, LLC*, 578 S.W.3d 758, 759 (Mo. banc 2019). On retransfer back to our Court, we affirmed the trial court's appointment of the receiver. *Meadowfresh Solutions USA, LLC v. Maple Grove Farms, LLC*, 586 S.W.3d 353 (Mo.App. S.D. 2019).

assets of Maple Grove by virtue of the assignments of the notes from AACL. This appeal followed.

## Background

### *The Membership Composition*

Maple Grove is a limited liability company created for the purpose of raising dairy cattle for the sale of milk production and to sell cull cows. The farm is located in Jasper County, Missouri. The members of Maple Grove are Meadowfresh, Ted and Carol Dahlstrom, Curtis and Lisa Hall, and Leon Rinehart.[7] Meadowfresh is by far the largest owner of Maple Grove. The initial members of Meadowfresh are the Fultons, the Dahlstroms, and Kyle Bounous. The Fultons have a majority membership interest in Meadowfresh. John Fulton is the Manager of both Meadowfresh and Maple Grove.

### *The Arvest Bank Loans to Maple Grove*

In order to begin dairy operations, Maple Grove borrowed money from Arvest Bank and executed promissory notes (the "Arvest notes" or "Arvest transaction"). John Fulton, acting as managing member of Maple Grove, signed the notes. The notes were secured by a deed of trust on the real estate located in Jasper County. John Fulton, Susan Fulton, Kyle Bounous, Ted Dahlstrom, and Carol Dahlstrom executed a "Meadowfresh Solutions USA, LLC Guaranty Addendum" for the debt in proportion to their membership interest.

### *Attempted Removal of Meadowfresh/Fulton by Minority Members*

After receiving the loans from Arvest Bank, Maple Grove operated the dairy farm with Fulton as Manager. In July 2015, the Minority Members of Maple Grove attempted

---

[7] The Operating Agreement of Maple Grove gave the Manager (John Fulton) the exclusive right to "borrow money for and on behalf of the Company and, in connection therewith, to execute and deliver instruments authorizing and effectuating the same[.]"

to hold a meeting to remove Fulton and Meadowfresh from their respective positions in Maple Grove. The trial court determined that this action was in violation of the operating agreement and all actions after the meeting were void. The Minority Members also attempted to redistribute all of Meadowfresh's membership interest among the remaining members with no compensation to the Fultons or Meadowfresh.

The Minority Members removed Fulton's name from the business and bank accounts and further attempted to remove Fulton as the authorized representative of the daily operation with Dairy Farmers of American ("DFA"). Additionally, the Minority Members alleged that Fulton stole money from them (when in fact it was his agreed-upon salary) by giving incomplete information to law enforcement, causing criminal charges to be filed against him. The charges were later dismissed. The jury in *Meadowfresh I* found in favor of Fulton on his claim for malicious prosecution.

*Maple Grove and AACL*

While *Meadowfresh I* was pending, Minority Members created AACL. AACL's only business was with Maple Grove. AACL was comprised of only Maple Grove's Minority Members with membership interests being distributed proportionally to their interest in Maple Grove. Minority Members, purporting to act as Maple Grove, entered into a cattle lease agreement with AACL whereby Maple Grove leased cattle from AACL. Under the terms of the agreement, Maple Grove paid the expenses while AACL got 100 percent of the proceeds from milk sales. The lease agreement provided that 100 percent of all proceeds earned for milk production owned by AACL at Maple Grove would be paid to AACL for the first 12 months and yet, Maple Grove would pay all

health and maintenance costs of the cows. Maple Grove was already a defendant in this lawsuit at the time the lease was made.

Maple Grove began to fail as a business with a high "cull and death rate" of the dairy cows. Several cows died in the first year after Jock Fulton was no longer allowed by the Minority Members to act as manager. The lease agreement provided that any loss of more than 10 percent is to be reimbursed to AACL. The loss was over 10 percent. In fact, Maple Grove lost 62 percent of the herd. Maple Grove had to cover all expenses, give AACL all proceeds, and reimburse AACL for the cost of the cows. Maple Grove has not paid all expenses for milk production to AACL and, at the time of trial in *Meadowfresh I*, Maple Grove had not reimbursed AACL for the costs of the cattle deaths.

Maple Grove owed AACL $250,000 under the lease and approximately another $275,000 in loans. These are debts on the books of Maple Grove as AACL had no other business other than with Maple Grove. AACL has never provided written notice of any meeting and it has never produced any meeting minutes. AACL has no budgets or corporate books and uses the same email address as Maple Grove. In *Meadowfresh I*, Maple Grove paid the attorney's fees for AACL up through June 30, 2017. The attorney's fees between Maple Grove and AACL were not separated until after Respondents sent discovery requests regarding attorney's fees. The same attorneys represented AACL and Maple Grove throughout the meeting in 2015 and the appeals.

*The Loan from Enowski to AACL*

While *Meadowfresh I* was pending, in August 2016, Arvest Bank sent Maple Grove a letter stating that the promissory notes would become due in full in October

2016. Maple Grove did not pay the debt. In October 2016, Arvest Bank sent a notice of default and acceleration of debt to Maple Grove.

In October 2016, Kyle Bounous spoke to his longtime friend, Enowski, about private financing for him and his partners. Enowski knew Bounous and his partners needed $2,200,000, and knew generally of the pending lawsuit between Meadowfresh, the Fultons, and Maple Grove, AACL, and Minority Members. Enowski agreed to make the loan.

In January 2017, AACL signed a note (the "Enowski note") in favor of Enowski in the amount of $2,200,000. Under the terms of the Enowski note, the balance became due within six months (on July 15, 2017) and AACL agreed to pay a six percent interest rate to Enowski. Bounous testified that Enowski loaned the money because he "trusted [Bounous] as a friend," and that he is not aware of anyone else from Maple Grove or AACL dealing with Enowski with regard to the loan. Enowski did not hire his own attorney to prepare the promissory note; instead, AACL's attorney drafted the promissory note because Enowski "didn't see the need" to use his own attorney. The promissory note drafted by AACL's attorney does not reference Arvest notes or deed of trust. The trial court in *Meadowfresh II* found that Enowski did no due diligence with respect to the transaction.

The parties did not discuss Enowski receiving an assignment of any interest in Maple Grove property to secure the loan. Instead, Enowski received "personal guarantees" from AACL members Curtis Hall, Ted Dahlstrom, Carol Dahlstrom, Leon Rinehart, Kyle Bounous and Rhonda Bounous to secure the $2,200,000, as well as separate deeds of trust securing the loan from Ted Dahlstrom (through his company

9

Dahlstrom Land and Cattle, LLC), Leon Rinehart and his wife (Geni Rinehart), and Kyle Bounous and Rhonda Bounous.

*AACL Uses Enowski Loan Proceeds to Purchase Maple Grove Debt*

AACL then used the funds from the Enowski loan to purchase the four existing Arvest notes owed by Maple Grove. Arvest Bank assigned the notes and security instruments to AACL.[8] AACL believed that by structuring the transaction this way, they could foreclose on the Arvest notes and take enforcement action against Meadowfresh and Fulton (the parties obligated to pay the largest percentage of the debt). AACL also acknowledged that foreclosing on Maple Grove debt would transfer Maple Grove assets to AACL, an entity that Meadowfresh and the Fultons had no interest in.

*AACL Assigns Promissory Notes and Deed of Trust to Enowski*

While ***Meadowfresh I*** was still being litigated, and some two months after purchasing the debt owed by Maple Grove, AACL executed a Collateral Assignment of Promissory Notes and Deed of Trust to Bounous' longtime friend, Enowski. The assignment was recorded in Enowski's name and without his knowledge, in Jasper County, on March 21, 2017. Enowski was unaware of the Arvest notes or anything about purchasing loans from Arvest Bank. He also had never heard of AACL until the time of his deposition on December 14, 2017. In fact, Enowski testified that on January 11, 2017, the date he loaned the money to AACL, there were no discussions about the assignment of the Arvest notes. Enowski has not yet sought to foreclose the AACL Deeds of Trust he holds as to Bounous, Rinehart or Dahlstrom Land and Cattle. Instead, Enowski claims a security interest in the assets of Maple Grove.

---

[8] According to Minority Members (per the testimony of Bounous), the purpose of purchasing the Arvest notes instead of paying off the notes was to ensure that the personal guaranties of the Fultons on the Arvest notes stayed in place.

*Judgment in Meadowfresh II*

The trial court issued an Amended Judgment declaring Enowski to be a partial secured creditor of Maple Grove in the amount of $1,120,000 (plus interest and fees) based on the assignments made by AACL to Enowski.[9]

In its findings, the court concluded, in relevant part:

> 5.  The Court has examined Jury Instructions 32 and 33 and Verdict Form D from the prior litigation and agrees with Defendants and Enowski that there is no specific finding or Judgment that Maple Grove and AACL are alter egos of each other (although said allegation is contained in Par. 123 of the Fifth Amended Petition.) The Court also notes the numerous, alternative propositions of fact posited in Verdict Director No. 32 and, to a lesser extent, Instruction No. 33. The Amended Judgment recites that the result of the piercing verdict is that the Defendants thereto were held jointly and severally liable for the monetary damages, **not** that the two entities were deemed alter egos. *See also*, ***Blanks v. Fluor Corp.***, 450 S.W.3d 308, 375 (Mo.App. E.D. 2014).
>
> 6.  Although the jury's verdicts and resulting judgments of piercing and release of guarantees arguably show the corporate form of AACL and/or Maple Grove was used for some improper purpose, the Court is unpersuaded to find from either those verdicts, or, from the more limited evidence presented here, that there exists the other requisite element of "complete domination" by either entity over the other. ***Blanks***, Id. at 375-376, 380-81. Therefore, the Court is unable to conclude from this record that Maple Grove and AACL were alter egos.

We would be remiss if we did not note that the trial court did not have the benefit of our decision in ***Meadowfresh I*** at the time it entered its judgment.[10] Nevertheless, based on the jury findings and our holding in ***Meadowfresh I***, the trial court findings erroneously applied the law.

**Standard of Review**

---

[9] At the evidentiary hearing, the receiver for Maple Grove, Mike Bridges, testified that he joined in and adopted Meadowfresh's opposition to Enowski's claim of secured status. AACL joined in the argument of Enowski.

[10] In fact, the Minority Members objected throughout ***Meadowfresh II*** that the claims of ***Meadowfresh I*** were subject to appellate review and not binding on the trial court.

11

This is an appeal from a court-tried case. Accordingly, we will affirm the judgment of the trial court unless there is "no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976). A claim that a judgment erroneously declares or applies the law is a question of law. ***Pearson v. Koster***, 367 S.W.3d 36, 43 (Mo. banc 2012). We review questions of law *de novo*. ***StopAquila.org v. City of Peculiar***, 208 S.W.3d 895, 899 (Mo. banc 2006). In applying *de novo* review, we give no deference to the trial court's legal conclusions. ***Stiers v. Director of Revenue***, 477 S.W.3d 611, 614 (Mo. banc 2016).

Our analysis concerns two questions: (1) whether collateral estoppel[11] applies to prevent the parties from re-litigating the issue of whether AACL was the alter ego of Maple Grove with respect to the Arvest transaction; and (2) if so, what interest did AACL/Maple Grove convey to Enowski when it executed the assignment of the notes. Both issues raise questions of law. Accordingly, *de novo* review applies and we give no deference to the trial court's legal conclusions.

## Analysis

*Meadowfresh's Point II*

In Point II of Meadowfresh's brief, Meadowfresh alleges the trial court erred in finding Enowski to be a partial secured creditor of Maple Grove because: (1) ***Meadowfresh I*** established that AACL and Maple Grove were alter egos with respect to the purchase of the Arvest Bank notes and (2) since Maple Grove and AACL were alter

---

[11] Meadowfresh uses the term "estoppel by verdict." We use the term "collateral estoppel." "On occasion this doctrine is referred to as collateral estoppel and the two terms, estoppel by verdict and collateral estoppel, are sometimes used interchangeably." ***Davis' Estate v. Davis***, 574 S.W.2d 477, 479 (Mo.App. K.C.D. 1978).

egos, the doctrine of merger extinguished the obligations reflected by the promissory notes. Accordingly, there were no obligations still existing in the promissory notes to secure at the time AACL assigned the notes to Enowski. We agree.

*Does Collateral Estoppel Apply on the Issue of Whether AACL and Maple Grove Were Alter Egos with respect to the Arvest Transaction?*

To address this issue, we begin by deciding if collateral estoppel applies to estop the parties from re-litigating the determination in ***Meadowfresh I*** that AACL and Maple Grove were alter egos with respect to the Arvest transaction.[12] Collateral estoppel is used to preclude the relitigation of an issue that has already been decided in a different cause of action between the same parties or parties in privity with them. ***SSM Health Care St. Louis v. Radiologic Imaging Consultants, LLP***, 128 S.W.3d 534, 541 (Mo.App. E.D. 2003). In determining if collateral estoppel applies, we must assess its fairness. ***Id.*** at 542. In assessing the fairness, we consider four factors: (1) whether an identity of issues exist, i.e., identity between the issue previously decided and the issue as to which collateral estoppel is invoked in the second litigation; (2) whether the former litigation resulted in a judgment on the merits[13]; (3) whether the party against whom collateral estoppel is invoked was a party or in privity with a party to the former litigation; and (4) whether the party against whom collateral estoppel is invoked had a full and fair opportunity to litigate the issue in the prior litigation. ***Id.*** We will only give collateral estoppel effect to a prior adjudication where all four factors are satisfied. ***Cooperative Home Care, Inc. v. City of St. Louis***, 514 S.W.3d 571, 581 (Mo. banc 2017).

---

[12] The Arvest Bank transaction refers to AACL's purchase of the debt owed to Arvest Bank by Maple Grove.

[13] "A judgment on the merits is one rendered when it is determined which party is in the right after argument and investigation, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial." ***Wilkes v. St. Paul Fire & Marine Ins. Co.***, 92 S.W.3d 116, 121 (Mo.App. E.D. 2002).

There is no question that *Meadowfresh I* resulted in a full and final judgment on the merits and that Maple Grove and AACL were parties that received a full and fair opportunity to litigate the alter ego issue with respect to the Arvest transaction. Both vigorously defended against Meadowfresh's claims in *Meadowfresh I*. The real question is whether Enowski, the purported creditor of Maple Grove, is precluded from litigating whether AACL and Maple Grove were alter egos with respect to the Arvest transaction. This issue is central to the question of what rights, if any, AACL, the alter ego of Maple Grove, could convey to Enowski. Here, all four factors of collateral estoppel are met.

In *Meadowfresh I*, the jury determined that the corporate veils of AACL and Maple Grove should be pierced for AACL and Maple Grove with respect to the purchase of the Maple Grove debt owed to Arvest Bank. "When a corporation or an LLC is used for an improper purpose and to perpetuate injustice by which it avoids its legal obligations, 'equity will step in, pierce the corporate veil and grant appropriate relief.'" *Missouri Ozarks Radio, Network, Inc. v. Baugh*, SD 35569, 2020 WL 415408, at *10 (Mo.App. S.D. Jan. 27, 2020), *reh'g and/or transfer denied* (Feb. 18, 2020), *transfer denied* (Apr. 28, 2020) (quoting *Pasta House Co. v. Miller*, 691 S.W.2d 460, 462 (Mo.App. E.D. 1985); and citing *Hammett v. Atcheson*, 438 S.W.3d 452, 461 (Mo.App. W.D. 2014)).

The jury's determination on the corporate piercing claim was based on Count X in Meadowfresh and the Fultons' Fifth Amended Petition in *Meadowfresh I*, which alleged that AACL was used by Maple Grove to deliberately undercapitalize Maple Grove and purchase its debts so AACL could foreclose on Maple Grove's assets. The jury decided this issue in *Meadowfresh I* in Meadowfresh's favor, determining that the purchase of the

Arvest notes by the Minority Members of Maple Grove, using the corporate form of AACL, was done for an improper purpose—to avoid their obligations to Meadowfresh. We affirmed that judgment in *Meadowfresh I*.[14]

The facts necessary to prove a piercing claim were reflected in Instruction 32. This instruction instructed the jury to find in favor of Meadowfresh if it found that Maple Grove and AACL exercised control of Maple Grove or AACL with respect to the purchase of Arvest Bank loans by AACL and such control was used to undercapitalize Maple Grove, improperly avoid Maple Grove's liabilities to Meadowfresh, or implement a plan whereby Maple Grove Farms or AACL could enforce the guaranties of Meadowfresh and Fulton for the debt of Maple Grove and such control caused injury or unjust loss to Meadowfresh or Fulton.

The jury's finding in favor of Meadowfresh and Fulton on this count was predicated on the jury's finding that Maple Grove and its individual defendants were alter egos of AACL with respect to the Arvest transaction. The trial court was correct to analyze whether the judgment in *Meadowfresh I* established that AACL and Maple Grove were "alter egos"; however, the trial court was incorrect to conclude that the omission of the word "alter ego" or "complete domination" in the instructions precluded it from finding the same. The requisite proof for establishing a piercing claim requires:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

---

[14] In fact, on appeal in *Meadowfresh I*, neither Minority Members nor AACL challenged the finding that the corporate veil had been pierced.

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

***Collet v. American Nat'l Stores, Inc.***, 708 S.W.3d 273, 284 (Mo.App. E.D. 1986).

Instruction No. 32 tracked the elements of a piercing claim. The finding of the first element—such control with respect to the transaction attacked that the corporate entity as to this transaction had no separate, mind, will or existence of its own—was established. This *is* an "alter ego" finding even if the word "alter ego" is not used. *See* ***Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.***, 885 S.W.2d 771, 773 (Mo.App. E.D. 1994) (holding "Under the alter ego rule, when a corporation is so dominated by a person as to be a mere instrument of that person and is indistinct from the person controlling it, then the court will disregard the corporate form if to retain it would result in injustice.") "Terms such as 'alter ego,' 'instrumentality,' 'conduit,' 'adjunct,' and 'agent' are often deemed equivalent and interchangeable." ***Blanks v. Fluor Corp.***, 450 S.W.3d 308, 377 (Mo.App. E.D. 2014).

Whether or not the judgment in ***Meadowfresh I*** established Maple Grove and AACL were "alter egos" with respect to the Arvest transaction does not require the invocation of magic words; it is a question of whether it substantively established that Maple Grove exercised such control over AACL with respect to the Arvest transaction that AACL had no independent will of its own. The answer to that question in ***Meadowfresh I*** was "yes." Because a veil piercing claim requires a requisite finding of control, the only reasonable conclusion the trial court could make in ***Meadowfresh II*** was

16

that Maple Grove exercised such control over AACL with respect to the Arvest

transaction that AACL had no independent will of its own (i.e., they are "alter egos").[15]

Having decided that the issue of "alter ego" was litigated and decided in

*Meadowfresh I* and is the same issue being litigated in *Meadowfresh II*, we next focus

on whether Enowski was in privity with AACL. Enowski was not a party to

*Meadowfresh I*. Accordingly, we must decide if he was in privity with AACL/Maple

Grove.

While the trial court in *Meadowfresh II* expressly declined to decide whether or

not Enowski was in privity with AACL, there was no other conclusion the trial could

make since Enowski's rights were wholly derivative of AACL's.[16] "'[P]rivity, as a basis

for satisfying the 'same party' requirement of [claim preclusion], is premised on the

proposition that the interests of the party and non-party are so closely intertwined that the

non-party can fairly be considered to have had his or her day in court.'" *Palmore v. City*

*of Pacific*, 393 S.W.3d 657, 664-65 (Mo.App. E.D. 2013) (quoting *Stine v. Warford*, 18

S.W.3d 601, 605 (Mo.App. W.D. 2000)).

---

[15] The Minority Members of Maple Grove were the same members as AACL. AACL's only business was with Maple Grove. AACL and Maple Grove used the same attorneys and AACL even used a Maple Grove email address. *Meadowfresh I* established that AACL was the alter ego of Maple Grove when it purchased the Maple Grove debt from Arvest Bank.

[16] The judgment states,

> The Court likewise does not resolve the legal issues of whether Enowski was a necessary and indispensable party; whether his interest in the subject guarantees was merely consequential and indirect; nor, whether he was in privity was AACL. The Court would also observe that in their pleadings prior to the evidentiary hearing here, Enowski did not assert that he held holder in due course status, nor did Plaintiff raise *res judicata or collateral estoppel* as affirmative defenses to Enowski's claim.

While Meadowfresh may not have used the word "collateral estoppel," they clearly put the trial court on notice that that they were asserting the trial court was bound by the "alter ego" finding in *Meadowfresh I*. Presumably, that is why the trial court decided that there was no finding of "alter ego" - because Meadowfresh was arguing that the trial court *was* bound by the finding.

Here, Enowski's and AACL/Maple Grove's rights were so closely intertwined that Enowski can fairly be considered to have had his day in court. In fact, Enowski's rights were completely dependent on the rights of AACL/Maple Grove since they were derived from the assignment of the notes. We draw upon similar reasoning used by the Eastern District of this Court in a concurring opinion in *Wendt v. General Acc. Ins. Co.*, 895 S.W.2d 210 (Mo.App. E.D. 1995) (en banc), to reach this result. There, collateral estoppel was asserted to preclude a husband from litigating a loss of consortium where the wife's claim, upon which husband's claim was dependent, had already been litigated. *Id.* at 212, 217-18. The concurrence noted, "[j]ust as a grantee or assignee is considered in privity with and may properly be held bound by a determination adverse to his grantor or assignor from whom his rights are derived, so too a spouse's claim for loss of consortium is derivative in nature and cannot exist in the absence of a viable claim on the part of the injured spouse to recover for her own injuries." *Id.* at 218; *Citibank (South Dakota), N.A. v. Mincks*, 135 S.W.3d 545, 557 (Mo.App. S.D. 2004) (where Citibank was suing Mary as PPBG's assignee and found "Citibank stands in PPBG's shoes and can occupy no better position than PPBG would if it sued Mary directly."); and *Adams v. Cossa*, 294 S.W.3d 101, 105 (Mo.App. E.D. 2009) ("An assignee steps into the shoes of its assignor; it acquires no greater rights than those held by the assignor at the time of the assignment.") Enowski's interest is derivative of the interests of Maple Grove/ AACL.

Fairness dictates that Enowski be bound by the alter ego determination in *Meadowfresh I* with respect to the Arvest transaction—the transaction from which all of his rights are derived. Enowski knew Bounous and his partners needed $2,200,000 and knew that there was a pending lawsuit between Meadowfresh, the Fultons, and Maple

18

Grove and individual defendants. Despite knowing about the pending lawsuit, Enowski agreed to make the loan. The trial court found that Enowski did no due diligence with respect to the transaction. Enowski's loan to AACL, at least in part, was because he trusted Kyle Bounous as a friend. He did not meet the other members of AACL and sought no financial information from AACL. Enowski made no reference to the Arvest notes or the loan documents. Enowski did not know about the security interest in the assets of Maple Grove until after this action was commenced. Two months after AACL purchased the loan and the security interests from Arvest Bank, AACL executed and recorded an assignment of the notes and deeds of trust to Enowski. Bounous' attorney drafted the loan documents. It cannot be seriously argued that AACL and Enowski's interests were not the same. Even in this appeal, AACL and Enowski are aligned.

Because Enowski, through Maple Grove/AACL, had a full and fair opportunity to litigate whether or not AACL and Maple Grove were alter egos with respect to the Arvest transaction in *Meadowfresh I* and because that issue is the same issue being determined in *Meadowfresh II*, he is bound by that determination.

*What rights did AACL/Maple Grove convey to Enowski through the assignment of the Arvest notes?*

Having decided that *Meadowfresh I* established that Maple Grove/AACL were alter egos with respect to the Arvest transaction, the next question is, what, if anything, did Maple Grove/AACL convey to Enowski when it/they assigned its/their interest in the promissory notes. "'Missouri law is well-settled that an assignee acquires no greater rights than the assignor had at the time of the assignment.'" *Citibank (South Dakota), N.A.*, 135 S.W.3d at 556 (quoting *Carlund Corp. v. Crown Center Redevelopment*, 849 S.W.2d 647, 650-51 (Mo.App. W.D. 1993)).

Because we treat AACL as Maple Grove with respect to the purchase of the Arvest notes (as a result of the alter ego determination), the question becomes what Maple Grove acquired when it purchased its debt to Arvest Bank. In Missouri, "when property is conveyed by a mortgagor to the mortgagee, the equitable title is merged into the legal title, and the lesser estate, or the lien held by the mortgagee, is destroyed." *Savannah Place, Ltd. v. Heidelberg*, 122 S.W.3d 74, 83 (Mo.App. S.D. 2003). This doctrine is known as "merger." *Id.*

Here, the mortgagee of the Maple Grove debt was Arvest Bank. When Arvest Bank assigned the interest in the promissory notes and deed of trust to AACL (which is the alter ego of Maple Grove), Maple Grove acquired the interest in the legal title and equitable title in the real estate (thus, "merger" occurred). At that time, the obligations in the promissory notes were extinguished as there were no outstanding obligations remaining under the notes. Since a deed of trust is dependent upon on an interest in a promissory note and because the obligations under the notes had been satisfied by AACL/Maple Grove, there was no remaining interest to secure.[17]

We acknowledge that the case law addressing whether the doctrine of merger applies is typically determined by the intention of the party in whom the estates unite. *Id.* at 83. In this case, that party is AACL/Maple Grove. The admitted intent in this case was to keep the obligations existing so that it could collect from the majority member on the outstanding obligations while retaining the assets in a shell company. The jury

---

[17] In Missouri, "[a] deed of trust securing a negotiable note passes with it[.]" *Goetz v. Selsor*, 628 S.W.2d 404, 405 (Mo.App. S.D.1982) (citing *Smith v. Holdoway Constr. Co.*, 129 S.W.2d 894, 904 (Mo. 1939)). "[A] party entitled to enforce a note is also entitled to enforce the deed of trust securing that note . . . [.]" *In re Washington*, 468 B.R. 846, 853 (Bankr.W.D.Mo.2011) (applying Missouri law). "An assignment of the deed of trust separate from the note has no 'force.'" *Fed. Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 669 (Mo.App. W.D. 2014) (quoting *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo.App. E.D. 2009)).

20

determined that this was an "improper purpose." Where the intent of the minority shareholder was to purchase the debt of a company for the improper purpose of hiding the assets attached to the notes to compel the majority shareholder to pay the debts, the jury found Fulton should not be held liable for such actions. To allow Enowski to benefit from the intent of structuring the transaction in a way that allows them to foreclose on the assets owned by Maple Grove would contradict the jury's decision.

Because AACL was acting as the alter ego of Maple Grove when it purchased the promissory notes owed by Maple Grove, the debt was extinguished when Maple Grove, acting through AACL, satisfied all obligations owed under the promissory notes. Because all obligations under the promissory notes were satisfied, there was no interest in the real estate to be secured through the deed of trust. Accordingly, Maple Grove/AACL assigned nothing of value to Enowski when it executed the assignment of the promissory notes.

Enowski agreed to loan his friend, Bounous and his partners, money. The parties executed the Enowski note in Enowski's favor with the balance becoming due within six months of execution. Enowski obtained personal guaranties from the individuals. Enowski knew about the lawsuit between Meadowfresh, Maple Grove, and AACL. Accordingly, he had knowledge his interest was dependent on the dispute as to AACL's authority to transfer the notes. Enowski is not a secured creditor of Maple Grove.

The trial court's judgment finding Enowski is a secured creditor of Maple Grove is reversed.[18]

---

[18] This Court issued an Order on January 14, 2020, asking the parties to show cause as to why this appeal should not be dismissed as the judgment entered by the trial court on November 8, 2019, left unresolved part of Enowski's claim. On January 24, 2020, the trial court issued an Amended Judgment making findings of fact as to the unresolved issues of Enowski's claim, rendering the judgment final.

Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J. – Concurs

William W. Francis, Jr., J. – Concurs